United States District Court
Southern District of Texas
**ENTERED**
May 06, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USI SOUTHWEST, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-04768 |
| | § | |
| EDGEWOOD PARTNERS INSURANCE | § | |
| CENTER D/B/A EPIC INSURANCE | § | |
| BROKERS AND CONSULTANTS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **INJUNCTION**

Pending before the Court is Plaintiff USI Southwest Inc.'s (hereinafter Plaintiff or USI) Motion seeking a preliminary injunction (Doc. No. 4) and brief in further support thereof. (Doc. No. 55). Defendants Edgewood Partners Insurance Center ("EPIC") and Todd C. Randolph filed a response in opposition. (Doc. No. 54). Both parties filed a reply. (Doc. Nos. 56 & 57). The parties indicated to this Court that they did not believe a hearing was necessary[1] and further requested that this Court issue an order on this motion prior to the expiration of this Court's (agreed) temporary restraining order ("TRO") (Doc. No. 12).

## I.

### A. Factual Background

Plaintiff's Complaint, which was subsequently verified in its application for an and injunction, alleges Randolph quit, without notice, his employment with USI to begin working for one of its competitors, Defendant EPIC. Plaintiff is in the insurance brokerage and risk management business. Randolph worked for Plaintiff in Houston. He was a vice president and

---

[1] Perhaps their decision to wiave a hearing was influenced by the current COVID-19 crisis. Indeed, the courthouse is currently closed and various court employees have tested positive. Even the preparation of this order has not been without certain difficulties as this Court's chambers has been evacuated and is awaiting the fumigation process.

1

produces and as such had a written employment agreement. His job included developing new business, business servicing, and expanding existing business relationships. In this position, he had access to USI's confidential information, including customers' names, decisionmakers, policy expiration dates, loss histories, and revenue information. He then moved to Georgia but continued to work for Plaintiff. Without giving the sixty-day notice required by his contract with USI, Randolph resigned on December 2, 2019 and immediately began to work for EPIC, one of USI's competitors. Plaintiff alleges that Randolph has begun and will continue poaching Plaintiff's customers using Plaintiff's confidential materials in violation of both Sections 5.3 and 6.1 of his Employment Agreement with USI. Sections 5.1 and 5.2 of the agreement provide that confidential information would be provided to Randolph and that USI retained full ownership over the confidential information. Section 5.3 of the Employment Agreement then provides that:

> During and following the Term hereof, Producer will not use, or disclose to any Person, any Confidential Information (determined as of any date during the Term hereof) of any USI Company, except (a) in the normal course of business on behalf of the Company (b) with the prior written consent of such USI Company or (c) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event Producer shall notify such USI Company as promptly as practicable (and, if possible, prior to the making of such disclosure). In addition, Producer will use reasonable efforts to prevent any such prohibited use or disclosure by any other person.

(Doc. No. 4-2 at 9). Section 6.1 of the Employment Agreement further provides that:

> On behalf of any Competitive Business, Producer shall not, without the Company's prior written consent, directly or indirectly (i) *solicit, sell, or provide or accept any request to provide services to, consult for, sign or accept* a broker of record letter with, or induce the termination, cancellation or nonrenewal of, any Company client, whose Client Account Producer managed or regularly serviced, and/or about which Producer obtained Confidential Information on behalf of the Company in the two (2) years prior to the termination of the Producer's employment with the Company or its successors or assigns; and/or (ii) *solicit, sell, or provide or accept any request to provide services to, consult for, sign or accept* a broker of record letter with, or induce the termination, cancellation or non-renewal of, any Active Prospective Client, which Producer solicited and/or about which Producer obtained Confidential Information on behalf of the Company in the two (2) years prior to the termination of the Producer's employment with the Company or its successors or assigns.

*Id.* (emphasis added). Under the terms of the Employment Agreement, Texas law controls. *Id.* at 12. In response, Defendants argue that the Employment Agreement is overbroad. For example, they argue it restricts the ability of Defendants to "accept" unsolicited business from former customers.

### B. Prior Proceedings

This motion comes back to this Court following a dispute regarding the appropriate forum for this suit to continue. The day after resigning from USI, Randolph filed an action in Georgia seeking declaratory relief that he was not bound by the non-compete clause. *Randolph v. USI Insurance Services, LLC*, Case No. 1:19-cv-05467-ELR (N.D. Ga. 2019). Three days later, USI filed this action in Texas state court. Randolph and EPIC removed the present suit to this Court and sought to transfer the case to the Northern District of Georgia. This Court, adhering to the "general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed," deferred the ruling on the motion to transfer to the court in Georgia. (Doc. No. 12 at 5) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999)).

To preserve the status quo while awaiting a ruling from court in Georgia, this Court issued a temporary restraining order (the "TRO") restraining Defendants from:

(1) using or disclosing any Confidential Information, as that term is defined in Sections 1, 5.1, and 5.2 of the Employment Agreement, of any USI Company, subject to the exceptions found in Section 5.3 of the Employment Agreement.

(2) directly or indirectly soliciting, selling, or providing any request to provide services to or consult for, or otherwise contacting clients, either current or active prospective (as of December 2, 2019), of USI, as agreed to in Section 6.1 of the Employment Agreement.

>   (3) directly or indirectly, soliciting the employment, consulting or other services of, or hiring, any other employee of the Company or any USI Company or otherwise inducing any of such employees to leave such USI Company's employment or to breach an employment agreement therewith, as agreed to in Section 6.2 of the Employment Agreement.

(Doc. No. 12 at 4). While the motion to transfer was pending in the Georgia court, this Court extended the TRO, by agreement of the parties, multiple times. The Georgia court ruled on the motion to transfer venue finding this Court was the proper venue for adjudicating the issues presented. *See* (Doc. No. 52-1). In fact, it transferred its case to the Southern District of Texas, and it has been docketed as *Randolph v. USI Insurance Services, LLC et al*, Case No. 4:20-cv-01419. Plaintiff filed a brief in further support of their original motion for a preliminary injunction, and Defendant filed a brief in furtherance of their opposition. *See* (Doc. Nos. 54 & 55).

## II.

A preliminary injunction is an "extraordinary remedy" that should only be granted if the movant has "clearly carried the burden of persuasion" on all four factors. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003). The movant, however, "need not prove his case." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991) (citing *H & W Indus. v. Formosa Plastics Corp.*, 860 F.2d 172, 179 (5th Cir. 1988)). Before a court will grant a preliminary injunction, the movants must clearly show "(1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) ); *see also*

*Winter v. NRDC*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

The Court finds Plaintiff has established the four prerequisites to receive a preliminary injunction. *First*, Plaintiff has shown a substantial likelihood of success on the merits. The uncontroverted facts of the case show that Defendant Randolph breached the Employment Agreement by failing to provide notice sixty days before resigning. Further, Plaintiff has shown substantial success on the merits of its restrictive covenant claim as Texas courts frequently approve of non-compete clauses of the type used here. *See, e.g.*, *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App.—Houston [1st. Dist.] 2009, pet. denied); *Reynolds v. Harper & Pearson Co.*, No. 01-86-00493-CV, 1987 WL 5186, at *2 (Tex. App.—Houston [1st Dist.] Jan. 8, 1987, no writ); *McElreath v. Riquelmy*, 444 S.W.2d 853, 856 (Tex. App.—Houston [14th Dist.] 1969, no writ); *see also* TEX. BUS. & COM. CODE ANN. § 15.50 (West) ("[A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.").

*Second*, the Court finds that USI will suffer irreparable injury if a temporary injunction is not issued. "In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury." *A & A Global Indus., Inc. v. Wolfe*, CIV.A. 3:01CV1515–D, 2001 WL 1388020, at *5 (N.D. Tex. Nov. 6, 2001). Here, the resultant harm to Plaintiff's good will and reputation with its customers are not easily quantifiable. In some aspects, insurance brokerage companies ultimately provide the same end product—insurance—to their clients. Therefore,

companies strive to differentiate their services by various proprietary and confidential means. Randolph had access to those proprietary aspects of USI's business. Some of these include client information (including names and decision-makers), loss data and forecasts, property modeling and modeling capabilities, loss histories, and revenue information. Most of this information is what gives a company its good will or competitive advantages which enable it to retain its clients' business and acquire new clients. If this information is disclosed, an entity would lose whatever edge it has in a very competitive business sector. Moreover, if this information is disclosed to a head-to-head competitor, the damage would be irreparable. EPIC and USI are just direct competitors and absent this injunction, such disclosure could damage USI beyond repair. Further, the loss of a client's business obviously causes a monetary loss, but it could also damage an entity's goodwill and reputation in such a fashion that it could not be made whole by money damages.

Defendants contest that the harm here is not probable or imminent. It is both. The manner in which Defendant Randolph left the company, without notice and accompanied by a declaratory judgment suit seeking to invalidate the non-compete clause, shows more than a hypothetical risk that Defendant Randolph will violate the clause absent the issuance of an injunction. Defendants argue that their compliance with the TRO shows that there is no risk of further violations. This misses the point. A preliminary injunction, like a TRO, is tailored to preserve the status quo and require compliance where the threat of non-compliance outside such Court order is apparent. The fact of compliance with the TRO serves only to show that the process works.

*Third*, Plaintiff has shown that the threatened harm outweighs any injury the injunction may cause to Defendants. If Plaintiff were to lose its customers, it would have no appropriate way of unraveling the losses to its business, goodwill, and reputation. Moreover, these losses would be difficult to quantify. So far, the Defendants have not alleged any difficulty complying with the

Court's TRO, or provided any evidence that compliance is materially harming Defendant Randolph's ability to build a clientele.

Even more, assuming such harms exist, they are the result of a contractual agreement. Defendant Randolph signed a contract whereby Randolph gained access to Plaintiff's confidential information. This information was not given up freely. Rather, it was provided in consideration for, *inter alia*, Randolph's agreement not to use that information for two years after his time at the company and to not solicit Plaintiff's clients. *See* (Doc. No. 4-2 at § 5.2). Defendants now believe that the non-compete he signed is overly broad. That may well prove true, but in the interim, and considering Plaintiff's likelihood of success on the merits, it is Defendants that must bear the burden of the injunction while awaiting a full adjudication of the merits. Simply put, Randolph cannot complain about the contract that he voluntarily signed and benefitted from for the last ten years.

*Fourth*, Plaintiff has shown that maintaining the status quo does not disserve the public interest. "To the contrary, it is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law." *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 571 (S.D. Tex. 2014). The injunction serves this interest by providing an additional level of deterrence. As Plaintiff points out in its brief, potential breaches of the non-compete would be difficult to detect, as much of the sales industry takes place off the record, which can give way to creative get-arounds. A court order subjects Defendants to a finding of contempt should they seek to side-step the restrictions.

### III.

Therefore, the Court hereby enjoins Defendant Randolph from:

(1) using or disclosing any Confidential Information, as that term is defined in Sections 1, 5.1, and 5.2 of the Employment Agreement, of any USI Company, subject to the exceptions found in Section 5.3 of the Employment Agreement.

(2) directly or indirectly soliciting, selling, or providing any request to provide services to or consult for, inducing the termination, cancellation, or non-renewal of, or otherwise contacting for a prohibited purpose any client of USI (as of December 2, 2019), that Randolph managed or regularly serviced or about which Randolph obtained Confidential Information on behalf of USI in the two (2) years prior to the termination of Randolph's employment, as agreed to in Section 6.1 of the Employment Agreement.

(3) directly or indirectly, soliciting the employment, consulting or other services of, or hiring, any other employee of the Company or any USI Company or otherwise inducing any of such employees to leave such USI Company's employment or to breach an employment agreement therewith, as agreed to in Section 6.2 of the Employment Agreement.

It is FURTHER ORDERED that Defendant EPIC, its employees and agents, successors and assigns, and those in active concert with Defendant EPIC, are hereby enjoined from:

(1) inducing, soliciting, or assisting Todd Randolph to do anything, directly or indirectly, or doing anything on Randolph's behalf, that Randolph is prohibited from doing under this Order;

(2) using any confidential information obtained from Randolph which Randolph acquired during his time working at USI.

Signed this 6th day of May, 2020.

Andrew S. Hanen
United States District Judge